**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report: June 18, 2020
Date Submitted: June 5, 2020

Kristin C. Collison, Esquire
Hudson Jones Jaywork & Fisher, LLC
225 South State Street
Dover, DE 19901

Tasha M. Stevens, Esquire
Fuqua Willard Stevens & Schab, P.A.
26 The Circle
Georgetown, DE 19947

RE:  *Estate of Queen Elizabeth Waples v. Ada Burton, et al.*
     C.A. No. 2018-0518-PWG

Dear Counsel:

Pending before me is a petition for declaratory judgment and to quiet title by one co-tenant who claims title to two parcels of real property through adverse possession and ouster of the other co-tenants. The remaining co-tenants filed a motion for summary judgment arguing that they are entitled to judgment as a matter of law because the requirements for adverse possession have not been met and the facts do not show that the adverse possessor intended to deprive them of their ownership interest. I find the evidence does not show an ouster, which is required to dispossess co-tenants, even though the adverse possessor, along with her husband, paid taxes and sewer charges for the properties, and I recommend the Court grant co-tenants' motion for summary judgment. This is a final report.

## I. Background

The property at issue are two parcels of land in Sussex County – one identified as tax parcel no. 334-13.20-40.00 ("Parcel 40") and the other identified as tax parcel no. 334-13.20-42.00 ("Parcel 42"), which were deeded to Irene White ("White") on May 29, 1947.[1] Parcel 40 was deeded to Alvin and Ida Hudson on September 17, 1947 and then to Hurley Waples, Sr. ("Hurley Sr.") and Annie Waples, as tenants by the entireties, on December 30, 1957.[2] There is no record of Parcel 42 being transferred from White. White died in 1948 and, under her Will, she left her sister a life estate in her real property, and Hurley Sr. as her remainder beneficiary.[3] When White's sister died in 1955, title to Parcel 42 vested in Hurley Sr., who died in 1969, leaving his children, Respondents Ada Burton ("Ada"), Hurley Waples Jr. ("Hurley Jr."), Emma Harmon, Martha White, Irene Morris ("Irene"), (together "Respondents"), and Augustus Waples, Sr. ("Augustus"), as his heirs and co-tenants of the Properties.[4]

---

[1] Docket Item ("D.I.") 1, ¶¶ 3, 4, Ex. B.

[2] *Id.*, Ex. B, Ex. C. I use first names in pursuit of clarity and intend no familiarity or disrespect.

[3] *Id.*, ¶ 8, Ex. D.

[4] D.I. 14, Resp'ts' Opening Br. in Supp. of Mot. for Summ. J. [hereinafter "Resp'ts' Opening Br."], at 3; D.I. 17, Pet'r's Answering Br. to Mot. for Summ. J. [hereinafter "Pet'r's Br."], at 2.

Petitioner Queen Elizabeth Waples ("Petitioner") claims that she and her late husband, Augustus, began caring for Parcel 40 and Parcel 42 (together, the "Properties") and treating them as their own beginning in the 1950s. They exercised their possession "in multiple open ways, including maintaining its appearance by mowing it regular and cultivating a garden on it," and by paying property taxes and sewer bills associated with the Properties.[5] Following Augustus' death on November 12, 2005, Petitioner asserts she continued to maintain the Properties and treat them as her own.

On July 18, 2018, Petitioner filed the petition for declaratory judgment and to quiet title asking the Court to declare that title in the Properties is vested in Petitioner through adverse possession. Respondents' October 15, 2018 answer denies that Petitioner has obtained title to the Properties through adverse possession. On April 17, 2020, Respondents filed a motion for summary judgment ("Motion") claiming that they are entitled to judgment as a matter of law because the undisputed facts do not show Petitioner's intent to hold the Properties exclusively for herself, or an ouster of the co-tenants. Petitioner responds in her Motion that, if the facts are considered in a light more favorable to her, sufficient facts exist to establish that Petitioner obtained title to the Properties by adverse

---

[5] D.I. 1, ¶¶ 11-13.

possession.[6]   Respondents' June 5, 2020 reply brief asserts Petitioner's sworn factual account demonstrates mutual use of the Properties by the co-tenants, not her exclusive possession.

## II.   Standard for Review

Under Court of Chancery Rule 56, the court grants a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[7]   The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[8]   Once the moving party has satisfied that burden, it falls on the non-moving party to show that there are factual disputes.   Evidence must be viewed "in the light most favorable to the non-moving

---

[6] Petitioner's Counsel filed a suggestion of death and motion for substitution on May 22, 2020, stating that Queen Elizabeth Waples died on January 18, 2020, and seeking to substitute her daughter, Demporis Jones, executrix of her estate, as Petitioner. D.I. 16. The motion for substitution was granted on June 12, 2020. D.I. 19.

[7] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Pine River Master Fund Ltd. v. Amur Fin. Co., Inc.*, 2017 WL 4023099, at *6 (Del. Ch. Sept. 13, 2017) (citation omitted); *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

[8] *Cain v. Sussex Cty. Council,* 2020 WL 2122775, at *6 (Del. Ch. May 4, 2020); *Dieckman v. Regency GP LP*, 2019 WL 5576886, at *11 (Del. Ch. Oct. 29, 2019) (citation omitted); *Wagamon*, 2012 WL 1388847, at *2.

party."[9]  Summary judgment may not be granted when material issues of fact exist or if the Court determines that it "seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[10]

## III.    Analysis

To claim title to property, an adverse possessor must show, by a preponderance of the evidence "(1) open and notorious, (2) hostile and adverse, (3) exclusive, (4) actual possession, (5) that was continuous for twenty years."[11] "Open and notorious means that the possession must be public so that the owner and others have notice of the possession."[12]  "A use is adverse or hostile if it is inconsistent with the rights of the owner."[13]  "Exclusive possession means that the adverse possessor must show exclusive dominion over the land and an

---

[9] *Williams v. Geier*, 671 A.2d 1368, 1389 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del. 1992)); *see also Pine River Master Fund Ltd.*, 2017 WL 4023099, at *6 (citation omitted).

[10] *Williams*, 671 A.2d at 1388-89 (citing *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del. 1962)); *In re Estate of Turner*, 2004 WL 74473, at *4 (Del. Ch. Jan. 9, 2004) (citation omitted).

[11] *Tumulty v. Schreppler*, 132 A.3d 4, 24 (Del. Ch. 2015).

[12] *Id.*, at 27 (citing *Walker v. Five N. Corp.,* 2007 WL 2473278, at *4 (Del. Super. Aug. 31, 2007).

[13] *Bogia v. Kleiner*, 2019 WL 3761647, at *10 (Del. Ch. Aug. 8, 2019), *reargument denied sub nom. Bogia v. O'Neal* (Del. Ch. 2020) (citation omitted); *see also Ayers v. Pave It, LLC*, 2006 WL 2052377, at *2 (Del. Ch. July 11, 2006) ("'[o]pen and notorious' mean[s] that the possession must be public so that the owner and others have notice of the possession.") (citations omitted).

appropriation of it to his or her own use or benefit."[14]  The adverse possessor "must intend to hold the land for himself, and that intention must be made manifest by his acts."[15]  Actual possession and open and notorious overlap and, "[a]s a general rule it will be sufficient if the land is so used by the adverse claimant as to apprise the community in its locality that it is in his exclusive use and enjoyment, and to put the owner on inquiry as to the nature and extent of the invasion of his rights."[16] "The 20 year period may be established by tacking on the periods when the property was held by successive adverse holders."[17]

"The party claiming adverse possession bears the burden of proving all the elements of the adverse holding."[18]  Once those elements have been shown, the burden shifts to the record owner to rebut the adverse possession claim by establishing that possession was permissive.[19]

The consideration is different, however, when the adverse possessor is a co-tenant seeking to dispossess other co-tenants of the property.  Possession by one co-tenant "is considered to be constructive possession by all other tenants in

---

[14] *Walker v. Five N. Corp.,* 2007 WL 2473278, at \*4.

[15] *Marvel v. Barley Mill Rd. Homes*, 104 A.2d 908, 911 (1954).

[16] *Id.*, at 912.

[17] *In re Campher*, 1985 WL 21134, at \*2 (Del. Ch. Mar. 20, 1985), *aff'd*, 498 A.2d 1090 (Del. 1985).

[18] *Id.*

[19] *Id.*

common."[20]  So, for a co-tenant to acquire title to the entire property by adverse possession, she must show an ouster of the co-tenants.  "For a co-tenant in possession to prevail upon a claim of adverse possession against a co-tenant out of possession it is necessary for a petitioner to establish:  (1) intent; (2) adverse possession in fact;  and (3) knowledge or notice of the adverse holding."[21]  "The proof of an ouster of a co-tenant must be stronger than would be an ouster between strangers."[22]  For possession of one co-tenant to amount to an ouster of other co-tenants, "there must be something to show a denial or repudiation of the other co-tenants' rights, or possession will be deemed to be held in subordination to the other cotenants' rights."[23]

I address Petitioner's claims to the Properties separately, relying, in large part, on undisputed evidence provided through her deposition testimony.[24]  Hurley, Sr. and his wife obtained title to Parcel 40 in 1957.  Petitioner claims that she and

---

[20] *In re Campher*, 498 A.2d at 1094; *see also Subt v. Subt*, 1990 WL 29755, at *3 (Del. Ch. Feb. 16, 1990); *In re 2.00 acres+ situated on the NW/S of Cty. Rd. #126, Kenton Hundred, Kent Cty.* [hereinafter *In re 2.00 acres+*]*,* 1977 WL 23801, at *2 (Del. Ch. Oct. 21, 1977).

[21] *In re Campher*, 498 A.2d at 1094; *In re 2.00 acres+*, 1977 WL 23801, at *3.

[22] *In re Campher*, 1985 WL 21134, at *2; *see also Collins v. Sussex Tr. Co.,* 1989 WL 48680, at *7 (Del. Super. May 5, 1989), *on reargument,* 1989 WL 70901 (Del. Super. June 15, 1989).

[23] *Huston v. Lambert*, 281 A.2d 511, 512 (Del. Ch. 1971) (citation omitted); *see also Smith v. Lemp,* 63 A.2d 169, 170 (1949).

[24] The transcript of Petitioner's deposition, which was conducted on April 2, 2019, is included as an appendix to the Motion. D.I. 14, App., A-8 - A-57.

Augustus began caring for Parcel 40 and treating it as their own in the 1950s. Parcel 40 had a house on it that was not lived in and was torn down before Hurley Sr.'s death in 1969.[25]  Petitioner maintained a garden and chicken yard on Parcel 40 for years and her son and grandson cut the grass on Parcel 40.[26]  She never put a fence on Parcel 40.[27]  She testified that the co-tenants walk across Parcel 40 and that Hurley, Jr., a co-tenant, used to sell birdhouses on Parcel 40, and also cut grass on the Properties.[28]

Hurley Sr., who inherited Parcel 42 in 1955, lived in a house on Parcel 42 until his passing in 1969, with his daughters Irene and Ada staying in the house at times.[29]  The house burned down after his death,[30] and Parcel 42 has remained mainly an empty lot used for parking by Petitioner's guests and by Hurley Jr., who also built buildings extending out from his own property onto Parcel 42 (some built more than 10 years ago), that he uses.[31]

---

[25] *Id.*, A-21 - A-22.

[26] *Id.*, A-21 - A-25.

[27] *Id.*, A-23.

[28] *Id.*, A-47 - A-50.  Petitioner' testimony was not clear whether Hurley, Jr. cut grass on both properties or only one of the properties.  She also testified that Hurley, Jr. had a garden on the property and it appeared, from her remarks, that she was referring to Parcel 40, although the garden may have been located on Parcel 42. *Id.*, A-47 - A-48.

[29] *Id.*, A-17.

[30] *Id.*, A-15 - A-17.

[31] *Id.*, A-36 - A-38; A-34 - A-36.

Petitioner's testimony in support of her adverse possession claim focuses on the fact that she and/or Augustus have paid taxes on the Properties, without contribution from the other co-tenants, since the 1950s.[32] She testified, however, that they began doing so, not because they believed they owned the Properties, but because Hurley, Sr.'s wife asked them to pay the taxes so the Properties wouldn't be taken.[33] More recently, after the sewer system was installed, Petitioner paid all of the sewer charges for the Properties, which remain in Hurley, Sr.'s name.[34] Petitioner testified that she and Augustus, to her knowledge, never told the other co-tenants that they could not come on to or use Parcel 40 or Parcel 42, or that she and Augustus owned the Properties and the co-tenants did not own the Properties.[35] She did not ask the Respondents to help pay the taxes or sewer charges, or to help care for the Properties because she felt she "shouldn't have to ask."[36] Further, when Hurley, Jr. asked her about purchasing a piece of Parcel 42, she responded "I can't sell the lot . . . because it was the heirs' property," and, when asked who she

---

[32] *Id.*, A-19, A-26, A-29 - A-30, A33, A-38.

[33] *Id.*, A-19 - A-20, A-29.

[34] *Id.*, A-26, A-29, A-37.

[35] *Id.*, A-29, A-31, A-44 - A-45.

[36] *Id.*, A-26 - A-27, A-28 - A-29.

was referring to as "heirs," she stated the Respondents.[37]  She testified "all of the property I own is heir property."[38]

Respondents argue that Petitioner is unable to prove the elements of exclusivity and hostility required for an adverse possession, or to show she had exclusive dominion over the land and appropriated it for her benefit, since her deposition testimony demonstrated mutual use of the Properties by her and the other co-tenants.  They claim she has not shown an ouster of the co-tenants, and "now wants to own the property because she paid the taxes for years without the help of the Respondents."[39]  And the "payment of taxes is not alone enough to create a title in land."[40]  Petitioner responds that Petitioner's allowance of Respondents' occasional use of the Properties, without confrontation, and her failure to expressly declare her intention to adversely possess the Properties, do not mean the hostile and exclusive elements of adverse possession have not been met.[41]

For Petitioner's adverse possession claim, I focus on activities related to the Properties in the 20-year period between 1998 and 2018, when Petitioner filed the

---

[37] *Id.*, A-32 - A-33.

[38] *Id.*, A-45.

[39] Resp'ts' Opening Br., at 9-10.

[40] *Id.*, at 10 (citing *Edwards v. Estate of Muller*, 1993 WL 487787, at *1 (Del. Ch. Nov. 15, 1993)).

petition. From 1969 (at Hurley, Sr.'s death) until his death in 2005, Augustus was a co-tenant of the Properties, along with his siblings. At Augustus' death, Petitioner (his surviving spouse) inherited a life estate in his co-tenancy in the Properties through intestacy, which began in 2005 and expired at her death in January of 2020.[42] Therefore, I analyze the adverse possession claim in consideration of their positions as co-tenants of the Properties with Respondents.

For their Motion to be granted, Respondents must show they are entitled to judgment as a matter of law and there are no material facts in dispute, even when the evidence is considered in a light most favorable to Petitioner. For Petitioner to obtain adverse possession over co-tenants of the Properties she must show open and notorious, hostile and adverse, exclusive, actual, and continuous possession of the Properties for 20 years. And, she must show her intent to adversely possess the Properties; her adverse possession in fact; and either notice to the other co-tenants, or their knowledge of her repudiation of their rights to the Properties. In other

---

[41] Pet'r's Br., at 7-9.

[42] *See* 12 *Del. C.* §502. I take judicial notice of Register of Wills filings for the estate of Augustus Waples, Sr., which include an affidavit signed on April 23, 2018 by Petitioner, as personal representative of the estate, stating that no Will executed by Augustus has been found. *See Arot v. Lardani*, 2018 WL 5430297, at *1, n. 6 (Del. Ch. Oct. 29, 2018) ("Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice.")(citations omitted); *State v. Falkowski*, 2001 WL 1448487, at *1, n. 1 (Del. Super. Oct. 2, 2001).

words, proof of her ouster of the other co-tenants of the Properties, which requires stronger proof than is required against strangers.

It is undisputed that Petitioner, and Augustus during his lifetime, paid taxes on the Properties for decades (since the 1950s), and that Petitioner has paid sewer charges on the Properties in recent years. Payment of taxes can give "rise to a question of fact on who controlled the land," and is "ordinarily considered an act of ownership."[43] However, courts have held that other facts in the record "negate an inference of exclusive possession."[44] Here, Petitioner's and Augustus' act in paying taxes on the Properties began not as a claim of ownership but as a generous, voluntary act to assist Hurley Sr. and his wife to prevent them from losing the Properties. It is undisputed that Respondents never offered to contribute – or contributed – towards the Properties' taxes. But, the evidence does not show any act or communication by Petitioner or Augustus signaling to the other co-tenants that the payment of taxes and sewer costs stopped being a voluntary contribution as a co-tenant and switched to a demonstration that the Petitioner/Augustus intended to hold the Properties exclusively for themselves. Neither Petitioner nor Augustus

---

[43] *Edwards v. Estate of Muller*, 1994 WL 728791, at *5 (Del. Ch. Dec. 13, 1994); *Collins v. Sussex Tr. Co.,* 1989 WL 48680, at *7 (Del. Super. May 5, 1989), *on reargument,* 1989 WL 70901 (Del. Super. June 15, 1989).

[44] *Edwards*, 1994 WL 728791, at *5; *see also Collins,* 1989 WL 48680, at *7, n. 4 ("The Court is not saying that payment of taxes is enough for the plaintiffs to claim adverse possession. There are numerous factors to proving such a claim").

told the other co-tenants that they could not use the Properties or that Petitioner was claiming exclusive ownership of the Properties. I recognize Petitioner's reluctance to cause the family dissension that may result from providing notice, through words or actions, that she was ousting family members from the Properties. But it is exactly that kind of interaction or overt action that shows an ouster – proof that the co-tenants had notice, or should have known, that the adverse possessor was repudiating their property interests and that, in response, the co-tenants failed to act to protect their ownership interests.

Further, Respondents' use of the Properties was not occasional as Petitioner argues. Respondents used the Properties, which are vacant lots, in a similar manner as did the Petitioner, by walking unrestricted on the Properties, and one of the Respondents, Hurley, Jr., parked cars, cut grass on the Properties, and used the Properties to sell his birdhouses. Unlike the Petitioner – who made no improvements on the Properties over the years – Hurley, Jr. constructed buildings that extended onto the Properties. Petitioner does not have to show absolute exclusivity for adverse possession but she has to show some proof that she was holding herself out as exclusive owner – that she intended to dispossess the co-tenants, that she actually possessed the Properties, and evidence of notice to, or the co-tenants' knowledge of, her adverse possession. And, Petitioner's claim that

13

Hurley, Jr. was under the impression Petitioner owned the Properties when he offered to help with the land, or to buy a piece of it, is unpersuasive. Offering to help with the Properties does not necessarily mean he thought Petitioner had exclusive possession of the Properties, since his offers were not inconsistent with a co-tenant offering to help maintain jointly owned property or asking one co-tenant about buying part of the Properties before talking with others. Moreover, Petitioner's response – that she can't sell the land because the land she owns is "heir property" – evidences Petitioner's understanding that her interests in the Properties are not exclusive and calls into question her intent and actual possession of the Properties.

Even considering the evidence in a light most favorable for Petitioner, Petitioner has not met her burden of proving the elements of adverse possession in this instance, and the material facts are undisputed. There were no overt, hostile and exclusive acts of possession that provided notice of Petitioner's exclusive ownership and denial or repudiation of the other co-tenants' rights to the Properties. Her and Augustus' payment of taxes and sewer costs does not, without additional evidence, support the inference of exclusive possession needed to show an ouster of co-tenants, especially since the proof required is stronger than would be required for a stranger claiming adverse possession. Therefore, Respondents

14

are entitled to judgment as a matter of law and I recommend that the Court grant their Motion.

## IV.    Conclusion

Based upon the reasons set forth above, I find that, considering the evidence in a light most favorable to Petitioner, Petitioner has not met her burden of proving the elements of adverse possession to show an ouster of Respondents as co-tenants of the Properties, Parcel 40 and Parcel 42.  Therefore, I recommend that the Court grant Respondents' motion for summary judgment.  This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

15